# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE AVALOS, an individual, | Case No.: 1:21-cv-00230-NONE-JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING IN PART MOTION FOR DEFAULT JUDGMENT |
| v. | |
| RED MOUNTAIN ASSET FUND I, LLC, a Delaware Limited Liability Company, | (Doc. 10) |
| Defendant. | [21-DAY OBJECTION DEADLINE] |

Plaintiff seeks default judgment against Red Mountain Asset Fund I, LLC (Doc. 10), and the defendant has not opposed this motion. For the following reasons, the Court recommends the motion for default judgment against defendant be **GRANTED IN PART**.

### I.  Relevant Procedural History

On February 22, 2021, the plaintiff initiated this action related to alleged violations of the Americans with Disabilities Act and the Unruh Civil Rights Act. (Doc. 1) The plaintiff served the summons on March 21, 2021, but the defendant failed to file a responsive pleading as required by Federal Rule of Civil Procedure 12(a)(1)(A)(i).

Upon motion by the plaintiff, the Court entered the Clerk's Certificate of Entry of Default against defendant on April 13, 2021. (Docs. 7, 8.) On May 28, 2021, plaintiff filed the motion now pending before the Court seeking default judgment against defendant Red Mountain Asset Fund I, LLC. (Doc. 10.)

1

## II. Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. Pope v. United States, 323 U.S. 1, 11 (1944); see also Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of North Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment." Pepsico, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), accord Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. Id. at 1472.

## III. Plaintiff's Allegations

As asserted by the Plaintiff, he is an adult California resident. (Doc. 10-1 at 5.) Plaintiff alleges that he is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting and grasping objects. (Id.) As a result of these disabilities, Plaintiff alleges, he relies upon mobility devices, including at times a wheelchair, to ambulate. (Id.) Plaintiff claims that with such disabilities, he qualifies as a member of a protected class under the Americans with Disabilities Act 42 U.S.C. §12102(2) and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq. (Id.) According to the Plaintiff, at the time of his visits to

Defendant's facility and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA. (Id.) Plaintiff reports that he is also the holder of a disabled person parking placard. (Id.)

According to the Plaintiff, on or about February 6, 2021, he went to the business located 4851 White Lane, Bakersfield, CA 93309 for the dual purpose of purchasing food and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning of federal and state law. (Id.)

According to the Plaintiff, although parking spaces were some of the facilities reserved for patrons, there were barriers for persons with disabilities that caused the named facilities to fail as to compliance with the Americans with Disability Act Accessibility Guidelines in or around February 2021. (Id.) Plaintiff reports that instead of having architectural barrier free facilities for patrons with disabilities, Plaintiff experienced a built-up curb ramp that projected from the sidewalk and into the access aisle in violation of Section 406.5. (Id. at 5-6.) Furthermore, Plaintiff alleges, the slope of the curb ramp exceeds the maximum grade allowed by ADAAG specifications in violation of Section 406.1. (Id. at 6.) According to the Plaintiff, there were also cracked and broken surfaces in the accessible parking area in violation of Sections 502.4 and 302.1. (Id.)

Plaintiff asserts that he would like to return to the business but is dissuaded from doing so because of the lack of compliant facilities. (Id.) Plaintiff claims that as soon as the facilities are made accessible, he will be able to patronize the business again without fear of discrimination. (Id.)

**IV.   Discussion and Analysis**

Applying the factors articulated by the Ninth Circuit in Eitel, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

A.   Prejudice to plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. See Pepsico, Inc., 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds plaintiff would be prejudiced if default judgment is not granted.

B.  Merits of plaintiff's claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together. See J & J Sports Productions v. Hernandez, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." Pepsico, Inc., 238 F.Supp.2d at 1175 (citing Kloepping v. Fireman's Fund, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

1.  Americans with Disabilities Act

Title III of the ADA prohibits discrimination by public accommodations, and provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). Discrimination under Title III includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C., § 12182(b)(2)(A)(iv). To state a claim for discrimination due to an architectural barrier, a plaintiff must also establish "(1) the existing facility at the defendant's place of business [or property] presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." Johnson v. Beahm, 2011 WL 5508893 *2 (E.D. Cal. Nov. 8, 2011) (quoting Parr v. L&L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1085 (D. Haw. 2000)).

*a.  Plaintiff's disability*

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities as defined by the ADA include walking and standing. Id., § 12102(2)(A). Plaintiff alleges that he is a person with disabilities

whose musculoskeletal and neurological systems are impaired. (Doc. 10-1 at 8.) According to the Plaintiff, these impairments result in weakness, fatigue, pain, and loss of strength in his arms, hands, and legs. (Id. at 8-9.) Plaintiff reports that he has also developed permanent nerve damage that has caused increased pain and limits his ability to function and limits his mobility, especially for any extended period of time. (Id. at 9.) Plaintiff reports that he is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, and/or sitting. (Id.) As a result of his impairments, Plaintiff reports, he is subject to falls, is unsteady on his feet, cannot walk for any significant distance without having to periodically rest, and often relies upon mobility devices to ambulate including a cane, walker, or wheelchair. (Id.)

Plaintiff reports that physical accessibility barriers that affect him most are those related to travel or grasping certain objects because they are difficult for him and create an unnecessary danger of falling. (Doc. 10-1 at 9.) Plaintiff reports that barriers that directly affect him are a lack of accessible routes to and from entrances, accessible routes inside facilities, accessible parking, handrails and support, and wide enough doorways. (Id.) According to Plaintiff, in addition to being dangerous for him because of the danger of falling, these types of barriers also affect his ability to use either a cane, rollator, or wheelchair if he tries to gain access. (Id.) Plaintiff reports that due to these disabilities, he relies upon mobility devices, including, at times a wheelchair, to ambulate. (Id.) Given that Plaintiff's physical impairment limits his ability to stand and walk, the Court finds he is disabled within the meaning of the ADA.

      *b.*      *Defendant's ownership of a place of public accommodation*

Plaintiff alleges that the subject property is a business that is identified as a place of public accommodation and subject to Title III of the ADA. (Doc. 10-1 at 9, citing 42 U.S.C. § 12181(7)(B).) Plaintiff alleges that Red Mountain Asset Fund I, LLC, a Delaware limited liability company, owns the property located at 4851 White Lane, Bakersfield, CA 93309 upon which Golden Ox is located. (Doc. 1 at 2.) Because Red Mountain Asset Fund I, LLC is the owner of the property at issue, plaintiff has established the defendant is the owner of a place of public accommodation.

      *c.*      *Denial of access and presence of architectural barriers*

The next two elements of an ADA architectural barriers claim require the Court to evaluate

whether architectural barriers worked to discriminate against the plaintiff on account of physical disability. See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) ("an ADA plaintiff suffers an injury-in-fact either because discriminatory architectural barriers deter him from returning to a facility or because they otherwise interfere with his access to the facility").

Plaintiff asserts that the lack of access in and around the parking lot and pathways located on Defendant' property are barriers to the Plaintiff. (Doc. 10-1 at 10.) The Americans with Disabilities Act Accessibility Guidelines establish the technical standards for determining whether a barrier exists. Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004) (explaining that the ADAAG "lay[s] out the technical structural requirements of places of public accommodation . . . ."). The ADA requires that curb ramps and flared sides of curb ramps must be located so that they do not project into the parking access aisle and must not be steeper than 1:10. 36 C.F.R. § Pt. 1191, App. D § 406. Plaintiff reports that he experienced a built-up curb ramp that projected from the sidewalk and into the access aisle. (Doc. 10-1 at 10.) Plaintiff also alleges that the slope of the curb ramp exceeded the maximum grade allowed by ADAAG specifications. (Id.) However, he provides no evidence to support this conclusion. (See Doc. 10-4, Avalos Decl. ¶ 6.) The photos provided do not demonstrate the height of the curb or the length of the ramp (see Doc. 10-5) to allow the calculation of the slope. The Court finds that the plaintiff has failed to meet his burden of establishing that this is a barrier. However, the Court agrees the ramp should not be in the parking access aisle and violates of the ADAAG requirements.

Plaintiff also alleges that there were cracked and broken surfaces in the accessible parking area. (Doc. 10-1 at 10.) The ADA requires that floor and ground surfaces be stable, firm, and slip resistant. 36 C.F.R. § Pt. 1191, App. D § 302. Mr. Avalos declares that the parking lot had cracked and broken surfaces, and the photos support that (Avalos Dec. ¶¶ 6-7; Doc. 10-5), but he fails to evidence the width of the cracks. Nevertheless, the Court finds that the photos show unmistakably, a significantly large crack in the surface of the ramp, which clearly violates the ADAAG requirements. Thus, plaintiff has carried his burden to identify architectural barriers in violation of the ADA standards at the subject property.

///

*d.     Removal of the barriers*

A plaintiff must establish that removal of an architectural barrier "is readily achievable" to state a cognizable claim for a violation of the ADA. See 42 U.S.C. § 12182(b)(2)(A)(iv); Johnson, 2011 WL 5508893 at *2. The term "readily achievable" means it is "easily accomplishable and able to be carried out without much difficulty or expense." Id., § 12181(9). In general, whether removal "is readily achievable" requires the Court to consider:

>   (A) the nature and cost of the action needed under this Act;
>
>   (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
>   (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
>   (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 USCS § 12181(9).

Although plaintiff does not offer any information regarding these factors, the federal regulations make it clear that the barriers identified by plaintiff are of the type presumed to be readily removable. Under 28 C.F.R. § 36.304(c), examples of "measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation" include "installing an entrance ramp, widening entrances, and providing accessible parking." Moreover, plaintiff's allegation that the removal of barriers is readily achievable is sufficient at this juncture. See Johnson v. Hall, 2012 WL 1604715 *3 (E.D. Cal. May 7, 2012) (finding the plaintiff's allegation that the barriers were "readily removable" and that he sought "injunctive relief to remove all readily achievable barriers" satisfied his burden); Johnson v. Beahm, 2011 WL 5508893, *3 (E.D. Cal. Nov. 8, 2011) (holding the plaintiff's allegation that architectural barriers were readily removable was sufficient because it was accepted as true on default); see also Sceper v. Trucks Plus, 2009 WL 3763823 *4 (E.D. Cal. Nov. 3, 2009) (granting default judgment on an ADA claim although the plaintiff did "not specifically allege that removal of barriers was readily achievable," and pled instead that the defendants "were required to

remove architectural barriers"). Accordingly, the Court finds removal of the barriers identified by plaintiff is "readily achievable" within the meaning of the ADA.

    *e.    Conclusion*

Based upon the foregoing, the Court finds that plaintiff has met his burden to state a prima facie discrimination claim in violation of Title III of the ADA.

    2.    California's Unruh Civil Rights Act

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

Significantly, any violation of the ADA also is a violation of California's Unruh Civil Rights Act. Cal. Civ. Code § 51(f); see also Molski, 481 F.3d at 731 ("Any violation of the ADA necessarily constitutes a violation of the Unruh Act"). However, to be entitled to statutory damages under the Unruh Act, the plaintiff must demonstrate the barriers resulted in "difficulty, discomfort or embarrassment" Cal. Civ. Code § 55.56(b).

C.    Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Pepsico, Inc., 238 F.Supp.2d at 1176. When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. See Eitel, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

Plaintiff is seeking an award in the amount of $8,269.00. (Doc. 10-1 at 13, citing Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) (finding $13,739.20 was reasonable and collecting other cases where $10,119.70 and $12,000.00 were also reasonable and, in fact, a "relatively small award of damages" in similar ADA cases).) Accordingly, this factor weighs in favor of entry of default judgment.

D. Possibility of dispute concerning material facts

There is no evidence of a genuine issue of material fact because the Court accepts the factual allegations in the complaint as true. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). Notably, the defendant has submitted nothing to contradict them.

The plaintiff served defendant Red Mountain Asset Fund I, LLC on March 21, 2021, and the defendant was given ample opportunity to respond to the complaint and to participate in the proceedings. After plaintiff moved for default judgment, defendant still failed to respond. Accordingly, this factor weighs in favor of granting default judgment.

E. Whether default was due to excusable neglect

The sixth Eitel factor examines whether the defendant's failure to respond to the complaint was the result of excusable neglect. Eitel, 782 F.2d at 1471-72. Plaintiff properly served defendant Red Mountain Asset Fund I, LLC with the summons and complaint, yet defendant made no appearance in this matter and failed to respond to the present motion. There is no suggestion that this failure is due to excusable neglect. See Shanghai Automation Instr. Co. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). Thus, this factor also weighs in favor of entry of default judgment because defendant has failed to make any appearance in this case.

F. Policy favoring decisions on the merits

The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits. Eitel, 782 F.2d at 1472. Nonetheless, where a defendant fails to answer the complaint, a decision on the merits is "impractical, if not impossible." Elektra Ent. Group, Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citations omitted). Thus, given defendant's failure to appear or respond in any way, this factor does not preclude entry of default judgment. Id. at 393.

G. Conclusion

Based upon the foregoing, the Court finds the Eitel factors weigh in favor of granting default judgment and, therefore, recommends the motion for default judgment be **GRANTED**.

///
///
///

**V.     Relief Requested**

Plaintiff seeks injunctive relief, statutory damages, and attorney's fees and costs. (See Doc 1; Doc. 10-1 at 14-16.) Unlike the ADA, the Unruh Act and California Disabled Persons Act permit the recovery of monetary damages. See Molski, 481 F.3d at 731; Cal. Civ. Code §§ 52, 54.3.

A.     Statutory Damages

Plaintiff seeks statutory damages for the defendant's violations of the Unruh Act and California Disabled Persons Act. (Doc. 1 at 8-9.) The Unruh Act provides that a plaintiff subjected to discrimination is entitled to recover $4,000.00 for each occasion on which he was denied equal access. Cal. Civ. Code § 52(a). Similarly, the California Disabled Persons Act provides for statutory damages in the amount of $1,000.00. Cal. Civ. Code § 54.3. "Proof of actual damages is not a prerequisite to recovery of statutory minimum damages." Hubbard v. Rite Aid Corp., 433 F.Supp.2d 1150, 1170 (S.D. Cal. 2006) (citing Botosan v. Paul McNally Realty, 216 F.3d 827, 835 (9th Cir. 2000)). To recover statutory damages, a plaintiff must only show that he was "denied full and equal access," not that he was "wholly excluded from enjoying Defendant's services." Id. (citing Hubbard v. Twin Oaks Health and Rehab. Center, 408 F.Supp.2d 923, 932 (E.D. Cal. 2004)). Pursuant to Cal. Civ. Code § 55.56(b), "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(b). A plaintiff shows he was deterred from accessing a place of public accommodation where:

> (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.
>
> (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.

Cal. Civ. Code § 55.56(d). Thus, a plaintiff may recover statutory damages even if he does not enter a facility. Botosan, 216 F.3d at 835.

Plaintiff asserts that he went to the subject property on or about February 6, 2021 and encountered barriers identified in his complaint. (Doc. 1 at 3-4.) He asserts that there were no designated parking spaces available for persons with disabilities, and he encountered architectural

barriers for patrons with disabilities, including a built up curb ramp that projects from the sidewalk and into the access aisle, a curb ramp in excess of the maximum grade allowed by ADAAG specifications, and cracked and broken surfaces in the accessible parking area. (Id.) Plaintiff claims that because of these deficiencies, the parking, paths of travel, and demarcated accessible spaces at the property were inaccessible. (Id. at 3.) However, he fails to provide any evidence or explanation how the barriers "actually denied" him full and equal access and the Court declines to speculate. The complaint also fails to explain how these areas constitute barriers.

Liberally construed, the Court finds the plaintiff's showing is sufficient to establish he encountered barriers identified in the complaint, and he was deterred from using the services of a place of public accommodation, though he does not demonstrate how each of the barriers cause the deterrence. Accordingly, an award of the requested statutory minimums under the Unruh Act and California Disabled Persons Act is appropriate, and the Court recommends plaintiff's request for an award in the amount of $4,000.00 be **GRANTED**.

B.      Injunctive Relief

The court may grant injunctive relief for violations of California law under Civil Code § 52.1(h). To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), a plaintiff must show the defendants have violated the Americans with Disabilities Act Accessibility Guidelines. Where the plaintiff meets this burden, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . ." Id.; see also Moeller v. Taco Bell, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011).

A plaintiff is not required to satisfy other prerequisites generally necessary for injunctive relief since "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." Moeller, 816 F.Supp.2d at 859 (quoting Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1175-76 (9th Cir. 2010)). Thus, injunctive relief is proper when architectural barriers at a defendant's establishment violate the ADA and removal of the barriers is readily achievable. See, e.g., Moreno v. La Curacao, 463 Fed. App'x. 669, 670 (9th Cir. Dec. 23, 2011); Johnson, 2011 WL 2709365 *3; Sceper, 2009 WL 3763823 at *4.

As discussed above, plaintiff has stated a viable Title III discrimination claim, including that the removal of the barriers at the subject property is readily achievable. Plaintiff alleges that the defendant is required to provide accessible routes and parking facilities for persons with disabilities, and the defendant is also required to maintain the accessible facilities so that they remain useable for persons with disabilities. (Doc. 10-1 at 15.) Injunctive relief compelling defendant to provide disability access to the facility in accordance with the ADAAG is appropriate. See 42 U.S.C. § 12188(a)(2) (authorizing injunctions under the ADA).

C. Request for Attorney's Fees and Costs

Plaintiff also seeks an award of attorney's fees and costs in the amount of f $4,269.25. (Doc. 10-3 at 2-3, Manning Decl. ¶¶ 6-8; Doc. 10-7 at 2.) Both the ADA and Unruh Act authorize the award of attorney's fees and costs for an action. See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Attorney's fee awards are calculated using the lodestar method, which multiplies the numbers of hours reasonably spent on the matter with a reasonable hourly rate. Vogel v. Harbor Plaza Ctr., LLC, 893 F.3d 1152, 1160 (9th Cir. 2018). When "calculating a fee applicant's lodestar, a court has discretion to exclude hours that were not reasonably expended by counsel." McDonald v. Navy Exch. Serv. Command, 691 F. App'x 448, 449 (9th Cir. 2017) (internal quotations omitted).

Plaintiff's counsel seeks an award of $3,731.25 in attorney fees, plus $538.00 in filing fees and service costs. (Manning Decl. ¶ 8; Exh. 5.) Specifically, Plaintiff requests for 3.25 hours of work expended by Joseph R. Manning at an hourly rate of $450 and for 6.00 hours spent by an associate attorney, David Fitzgerald, at an hourly rate of $375. (Id.)

1. Hourly Rates

Plaintiff requests an hourly rate of $450 for Mr. Manning and $375 for Mr. Fitzgerald. (Manning Decl. ¶ 8; Exh. 5.) Courts generally calculate the hourly rate to be charged according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). In general, courts use the rates of attorneys practicing in the forum district, which, in this case, is the Eastern District of California, Fresno Division. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1993); Davis v. Mason Cnty., 927 F.2d 1473, 1488 (9th Cir. 1991). The fee applicant bears the burden of producing sufficient evidence that the requested rates

are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 895 n.11.

The declaration submitted by Mr. Manning states, "I have been in practice since 2002. My billing rate for ADA related work is $450.00, which is a fair rate for attorneys with similar experience and expertise in this nuanced area of law. My associate attorney's hourly rate of $375 is based on average attorneys' fees charged in the general geographic area with similar experience. The attorneys billed at the associate rate have a minimum of five years of experience." (Manning Decl. ¶ 7.) The Court finds the requested rates to be unreasonable for two reasons. First, the cursory statement in Mr. Manning's declaration provides minimal explanation for why the requested rates are justified in this case. Indeed, in support of a motion for default judgment in other cases, Mr. Manning submitted an identical statement, and the district court found the requested rates to be unreasonable in light of the scant evidence provided. See Avalos v. Sidhu, No. 1:20-cv-01602-, 2021 U.S. Dist. LEXIS 93548, at *16 (E.D. Cal. May 17, 2021); Perri v. CA 199 Arcadia Owner LLC, No. CV 20-05849-RSWL—KSX, 2020 WL 6939839, at *8 (C.D. Cal. Nov. 24, 2020). Mr. Manning fails to present any evidence of his qualifications, experience with ADA-related work, or any information on the rates approved by other courts in this district for similar work. See i.d.; (Manning Decl. ¶ 7.) The comments in his declaration, absent more, are insufficient to support the $450 hourly rate requested. Further, in support of his requested rate, Mr. Manning highlights that this rate is reasonable given his "expertise in this nuanced area of law." (Manning Decl. ¶ 7.) "But, 'such cases are ubiquitous[,] rarely have even mildly complicated issues to address,' and typically involve boilerplate filings." Rutherford v. Lucatero, No. 8:19-cv-1609-JLS—JDE, 2020 WL 2132995, at *8 (C.D. Cal. Feb. 24, 2020) (internal citation omitted). Given that this action and the associated filings appear to be nearly identical to the hundreds of other cases filed by Mr. Manning on behalf of Plaintiff, among others, in this district, "the Court is skeptical that an ordinary ADA case on *default judgment* justifies work at an hourly rate of $450." Id. (emphasis in original).

Additionally, Mr. Manning failed to provide the Court with any qualifications or discussion of his associate attorney's prior experience. Based on information provided on the State Bar of California's website, Mr. Fitzgerald was admitted to the bar in 2012, was inactive in 2013 and has

13

been practicing since October 2014. Based on the lack of information supporting the requested hourly rate, the Court is unable to conclude that this associate attorney's rate is reasonable.

As in the prior cases, Mr. Manning's conclusory statement is insufficient to establish that the requested hourly rates of $450 for himself and $375 for his associate are reasonable.

Second, "[i]n the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour." TBK Bank, SSB v. Singh, No. 117CV00868LJOBAM, 2018 WL 1064357, at *7 (E.D. Cal. Feb. 23, 2018) (collecting cases), *report and recommendation adopted*, No. 117CV00868LJOBAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018). For attorneys with "less than ten years of experience, . . . the accepted range is between $175 and $300 per hour." Silvester v. Harris, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 17, 2014) (citing Willis v. City of Fresno, No. 1:09-CV-01766—BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014); Gordillo v. Ford Motor Co., No. 1:11-cv—01786 MJS, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). Mr. Manning's requested hourly rate of $450 is in excess of the prevailing market rates in the Fresno Division, especially since Mr. Manning possesses fewer than 20 years of experience. Regarding Mr. Manning's associate attorney, the Court cannot find an hourly rate of $375 to be reasonable since the Court is devoid of any information about the attorney's experience or qualifications.

Given the lack of adequate supporting information for the requested rates, the Court recommends an hourly rate of $350 for Mr. Manning and $175—a reasonable rate for a starting attorney—for his associate attorney. See Avalos, 2021 U.S. Dist. LEXIS 93548, at *18 (reducing Mr. Manning's rate from $450 to $350 and the associate attorney's rate from $375 to $175); see also Perri, 2020 WL 6939839, at *8.

2. Time Expended

Plaintiff requests for 3.25 hours of work expended by Mr. Manning and for 6.00 hours for his associate attorney, Mr. Fitzgerald. (Manning Decl. ¶ 8; Exh. 5.) Reviewing first the hours expended by Mr. Manning, the Court finds that the number of hours Mr. Manning billed in this case is not reasonable given the nature of this case and his experience as a practitioner. On February 21, 2021, Mr. Manning recorded 1.0 hour to "edit/draft complaint for filing." (See Doc. 10-7 at 2.) Based upon

14

the Court's familiarity with the actions filed by Mr. Manning in this court, the Court is aware that this is basically a form complaint. The complaint filed in this action is nearly identical to complaints filed by Mr. Manning in dozens of other actions in this Court, with only the names of the parties and a few allegations changed to reflect the facts specific to this case. The Court finds that 0.4 hours of Mr. Manning's time is sufficient to draft and edit the complaint. See Avalos, 2021 U.S. Dist. LEXIS 93548, at *19 (reducing 1.0 hour billed by Mr. Manning to "edit/draft complaint for filing" to 0.4 hours); Perri, 2020 WL 6939839, at *9 (same). The Court will therefore deduct 0.6 hours from Mr. Manning's time entry on February 21, 2021.

Turning next to the number of hours expended by the associate attorney, the Court finds that the amounts indicated for certain tasks are unreasonable or non-compensable and should thus be reduced. On February 20, 2021, the associate attorney recorded 1.35 hours to conduct research of public records to determine the identities of the business owner and owner of real property. (Doc. 10-7 at 2.) But "[a] basic public records search to identify the owner of the Property is not the type of legal work that should be billed by an attorney at $425 per hour." Love v. Garcia, No. 5:15—CV-02004-CAS—SPX, 2017 WL 2927429, at *4 (C.D. Cal. July 7, 2017); *Perri*, 2020 WL 6939839, at *9 (disallowing time billed by Mr. Manning's associate attorney for conducting a public records search to determine the identities of business and property owners). On February 22, 2021, the associate attorney recorded 0.5 hours to "review[] and execute[] the front matter (civil case coversheet, summons, etc.)" (see Doc. 10-7 at 2), but these are purely clerical tasks and thus not recoverable. See Brandt v. Astrue, CIV. 08-0657TC, 2009 WL 1727472, at *3 (D. Or. June 16, 2009) (preparing summons and civil cover sheet is clerical); Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). This time will therefore be disallowed.

On April 1, 2021, the associate attorney recorded 0.4 hours (24 minutes) reviewing the "court-issued summons, Notice of Assignment, [and] Standing order." (Doc. 10-7 at 2.) Twenty-four minutes for reviewing these standard court-issued documents is excessive—0.2 hours (12 minutes) is sufficient. See Hensley, 461 U.S. at 433-34. Accordingly, the associate attorney's time will be reduced by 0.2 hours.

15

On April 13, 2021, the associate attorney recorded 0.7 hours (42 minutes) to review and execute the request for entry of default and to "review [the] file generally to confirm service proper and effected as to proper defendant." (Doc. 10-7 at 2.) The request for entry of default and supporting declaration total only two pages, excluding the captions and single-page certificate of service (see Doc. 7), and are nearly identical to documents Mr. Manning's firm has filed in other cases, except for the party names and ECF document numbers. The preparation and finalization of these short, form-like documents should not take more than thirty minutes (0.5 hours) total. Accordingly, the associate attorney's time will be reduced by 0.2 hours for this entry.

On May 24 and 25, 2021, the associate attorney recorded a total of 3.1 hours in connection with the motion for entry of default judgment, including drafting and executing a declaration on behalf of Plaintiff in support of the motion, preparing the motion, and finalizing the motion and supporting documents. (Doc. 10-7 at 2.) The motion for default judgment filed in this case is nearly identical to motions for default judgment filed by Mr. Manning's firm in other actions before this Court. Accordingly, the Court finds that 1.0 hour of the associate attorney's time is sufficient to prepare the motion and supporting documents. See Avalos, 2021 U.S. Dist. LEXIS 93548, at *21 (awarding 1.0 hours to prepare the application for default judgment and supporting documentation); Perri, 2020 WL 6939839, at *9 (awarding 0.9 hours to prepare the application for default judgment and supporting declaration).

Based on the foregoing, the Court recommends that Plaintiff be awarded 2.65 hours of time expended by Mr. Manning at an hourly rate of $350 and 1.65 hours of time expended by Mr. Fitzgerald at an hourly rate of $175, for a total of $1,216.25.

        3.      Litigation Expenses and Costs

Plaintiff requests to recover litigation expenses and costs of $538.00. (Manning Decl. ¶ 8; Exh. 5.) Under the ADA, a district court, in its discretion, can allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205. The costs here include expenses for the court filing fee and the costs of service, which are compensable pursuant to 42 U.S.C. § 12205. These litigation expenses may be awarded as costs to plaintiff. See Alvarado v. Nederend, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011)

(explaining "filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees" are typically identified as litigation costs). Accordingly, the Court recommends that plaintiff be awarded the sum of $538.00 for litigation expenses and costs.

4. Conclusion

| Professional | Hourly Rate | Hours | Total |
| --- | --- | --- | --- |
| Joseph R. Manning, Jr. | $350 | 2.65 | $927.50 |
| David Fitzgerald | $175 | 1.65 | $288.75 |
| | | **Total Fees** | $1,216.25 |

Additionally, Plaintiff should be awarded $538.00 for the costs of suit. Thus, the total award of damages, attorney's fees, and costs recommended is $5,754.25.

## VI. Findings and Recommendations

Based on the foregoing analysis, the Eitel factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. See Aldabe, 616 F.2d at 1092. Therefore, the Court **RECOMMENDS**:

1. Plaintiff's motion for default judgment against defendant Red Mountain Asset Fund I, LLC be **GRANTED**;
2. Plaintiff be **AWARDED** statutory damages in the amount of $4,000.00;
3. Plaintiff be awarded reasonable attorney's fees in the amount of $1,216.25 (2.65 hours at $350 per hour and 1.65 hours at $175 per hour) and costs and expenses in the amount of $538.00; and
4. Plaintiff be **GRANTED** an injunction requiring defendant to bring the property at 4851 White Lane, Bakersfield, CA 93309 into compliance with the accessibility requirements of the Americans with Disabilities Act.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days of the date of service of these Findings and Recommendations, any party may file written

objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Wilkerson v. Wheeler, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **June 22, 2021**  _____ **/s/ Jennifer L. Thurston**
CHIEF UNITED STATES MAGISTRATE JUDGE